SHANDS TEACHING HOSPITAL AND CLINICS, INC., Plaintiff-Appellant,

v.

BEECH STREET CORPORATION, Unisys Corporation, Defendants-Appellees.

No. 99-10114.

United States Court of Appeals,

Eleventh Circuit.

April 13, 2000.

Appeal from the United States District Court for the Northern District of Florida.(No. 98-00087-1:CIV-MMP), Maurice M. Paul, Judge.

Before CARNES, BARKETT and MARCUS, Circuit Judges.

BARKETT, Circuit Judge:

Shands Teaching Hospital and Clinics, Inc. appeals the dismissal of its complaint against Unisys Corporation and Beech Street Corporation. Shands sued Unisys and Beech Street for the non-payment of monies due to Shands for medical services provided to employees of the State of Florida pursuant to the state health insurance plan. The district court concluded that although the State of Florida was not named as a defendant in the suit, a judgment granting the relief sought by Shands would have to be satisfied from the state coffers, and thus the suit is barred by the Eleventh Amendment. Accordingly, the district court dismissed the claim pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

BACKGROUND

Shands Hospital provides health care services to enrollees in the Florida State Group Health Insurance Plan. The plan, established in accordance with Florida Statutes § 110.123 for the benefit of state officers, employees, retirees and their eligible dependents, is a self-insured plan funded by annual appropriations from the state legislature and premium payments by enrollees. Under the statute, the Department of Management Services ("DMS") is responsible for contract management and day-to-day management of the state program, including the determination of health care benefits to be provided, and the negotiation of contracts for health

care and health care administrative services. *See* Fla. Stat. Ann. § 110.123(3)(d) (West 1992 & Supp.2000). The statute authorizes the DMS to employ a professional administrator to process claims, and in 1995, after a competitive bidding process, the DMS contracted with Unisys to fulfill this function. Although Unisys is responsible for employee enrollment, premium collection, payment to health care providers and other administrative functions related to the program, the DMS retains final decision-making authority concerning the existence of coverage or benefits under the plan. *Id.* at § 110.123(5)(c).

In addition to serving as third party administrator, Unisys is also required under the contract with the State to provide a preferred provider organization (PPO) network. To fulfill the PPO component of its contract, Unisys, with the approval of the State, entered into a subcontract with Beech Street, a national managed care company that maintains a network of health care service providers with whom it has negotiated preferred rates.[1] Shands had been a provider in the Beech Street PPO network since 1989. Thus, by virtue of the contract between Beech Street and Unisys, Shands became a covered hospital for state plan enrollees.

The gravamen of Shands' claims against Unisys and Beech Street is that Shands has not been paid for medical services in accordance with its PPO network agreement with Beech Street or in accordance with Unisys' administrative responsibilities pursuant to Unisys' agreement with the State. The district court found, however, that any judgment for Shands would necessarily come from state funds, and thus that the State's Eleventh Amendment immunity bars this suit. Accordingly, the district court dismissed Shands' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Shands now appeals.

We review the dismissal of a complaint for failure to state a claim *de novo,* construing all allegations in the complaint as true and in the light most favorable to the plaintiff. *See Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir.1999). Dismissal under Rule 12(b)(6) is appropriate "only if it is clear

---

[1]Beech Street, as PPO subcontractor, is never in possession of any state funds, but simply is paid an access or rental fee for the term in which its network is used.

that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

DISCUSSION

In its complaint, Shands asserts two different claims: (1) that Unisys refused to reimburse Shands for certain medical services which Shands contends are "covered services" under the state plan; and (2) that Unisys made only partial payment for some medical services rendered. Shands argues that its cause of action is directed against the two private corporations, not against the State, and that Eleventh Amendment immunity does not extend to Unisys or Beech Street under such circumstances.

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment largely shields states from being sued in federal court without their consent, leaving parties with claims against a State to bring them, if the State permits, in the State's own tribunals. *See Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). The amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity. *See Hans v. Louisiana,* 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is well established that Eleventh Amendment immunity encompasses not only cases in which the State itself is named as a defendant, but also certain actions against state agents and state instrumentalities. *See Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

Shands recognizes that Eleventh Amendment immunity may extend to defendants other than the State based upon: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; and (3) from where the entity derives its funds and who is responsible for judgments against the entity. *See Stewart v. Baldwin County Board of Education,* 908 F.2d 1499, 1509 (11th Cir.1990); *Tuveson v.*

3

*Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d 730, 732 (11th Cir.1984). However, Shands argues that Unisys and Beech Street cannot be deemed arms of the state under any of these analytical prongs because they are autonomous private corporations that are not controlled by the State of Florida, and do not derive their funding from the State of Florida.

Shands' argument misses the mark. The pertinent inquiry is not into the nature of a corporation's status in the abstract, but its function or role in a particular context. Thus the question in this case is whether and to what extent these corporations are contractually acting as representatives of the State. Under the laws of Florida and the contractual provisions between the parties, it is clear that Unisys and Beech Street are simply administrators acting at the behest of the State with reference to Florida's health insurance program. The program is funded through annual legislative appropriations, and the State of Florida retains virtually complete control over the actions of its administrators.[2] Although we have found no case directly on point that has accorded Eleventh Amendment immunity to a private corporation such as Unisys, in analogous circumstances courts have found that sovereign immunity bars suits against private corporations acting as fiscal intermediaries in actions relating to federal Medicare reimbursement. *See e.g., Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 72 (2d Cir.1998); *Anderson v. Occidental Life Ins. Co.,* 727 F.2d 855, 856 (9th Cir.1984); *Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.,* 485 F.2d 1073, 1074-75 (D.C.Cir.1973); *see also Matranga v. Travelers Ins. Co.,* 563 F.2d 677, 677 (5th Cir.1977); *Peterson v. Weinberger,* 508 F.2d 45, 51 (5th Cir.1975). Thus, although these are private corporations that are neither controlled nor funded by the state, they are protected by governmental immunity when they are clearly acting as agents of the state. This is not to say that an agent of the government, be it federal or state, is totally immune to liability either in tort or in contract, or for actions exceeding their authority to act on the

---

[2]For example, contractual provisions between the State and Unisys reserve to the State the right to terminate the third party administrator contract for convenience, to inspect Unisys' records and work, and to conduct an audit. In addition, the State must approve all subcontracts and all printed materials. The State has on-line access to files, approves the claims administration manual, and owns all the program information and data.

government's behalf.  These cases do not extend blanket immunity to Medicare fiscal intermediaries, rather, immunity has been granted only to the extent that a judgment would expose the government to financial liability or interfere with the administration of government programs.

In line with the reasoning of these cases, we look to "the effect of the relief sought," *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 107, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) in order to determine whether Shands' claims are barred.  The dispositive question for Eleventh Amendment purposes is whether a judgment against Unisys or Beech Street would implicate the state treasury or interfere with the administration of the state group insurance program, or whether the claims constitute a private cause of action, arising out of tort or contract, for which Beech Street or Unisys would be financially responsible.

1.      *Dispute over "covered services."*

Shands maintains that certain medical services which it has provided for the benefit of plan enrollees, and which Unisys has declined to reimburse under the state plan, are in fact "covered services" within the meaning of the state plan.  In Count I of its complaint, Shands seeks declaratory judgment on the rights and liabilities of the parties under the implementing contracts for the state insurance plan.  We agree with the district court that this claim is in substance one against the State of Florida.

Under the Florida statute establishing the state insurance plan, Unisys' duties as third party administrator extend to employee enrollment, premium collection, payment to health care providers and other administrative functions related to the program, but the DMS retains final decision-making authority over the existence of coverage or benefits under the plan.  Fla. Stat. Ann. § 110.123(5)(e) ("Final decisions concerning the existence of coverage or benefits under the state group health insurance plan shall not be delegated or deemed to have been delegated by the department.").  Indeed, the state plan specifically provides a process whereby initial benefits determinations may be appealed to the DMS, to be reviewed in conjunction with the Agency for Health Care Administration.  The agency's denial of an appeal is subject to an administrative hearing and judicial review pursuant to Florida Statutes Chapter 120.

5

It is clear from the state law establishing the plan, and the implementing contracts to which the State and Unisys are party, that the DMS retains ultimate authority over Unisys' administrative actions with respect to benefits determinations. The denial of coverage is an administrative action within the scope of Unisys' duties as an agent of the DMS. Moreover, although Shands seeks only declaratory judgment on this issue, it is clear that such a judgment would ultimately affect the state treasury, insofar as the state insurance fund would be obliged to increase payouts on the number of covered services. Any analysis by the court of the State's obligations under the various contractual provisions would impermissibly intrude upon the future administration of the state program. For these reasons, we affirm the district court's dismissal of Shands' claim regarding covered services.

2.      *Partial Payment*

Shands' second claim seeks damages arising from Unisys' failure to pay the full amount due to Shands for medical services which it rendered to state plan enrollees. The 1989 Hospital Provider Agreement whereby Shands agreed to become part of the Beech Street PPO network entitles payors[3] to a "courtesy adjustment" or discount of thirty-five percent, "except [when] the Hospital has not received payment within thirty (30) days after the date the claim is approved in writing by Beech Street." Shands contends that although payments were not made within the requisite thirty days for the application of the discounted rate, Unisys nonetheless only paid at the discounted rate.[4]

---

[3]Because the Hospital Provider Agreement is a standard contract, and Beech Street makes its PPO network available to a number of different insurance plans, the third party payor is not expressly designated in the contract. For the purposes of the state plan, although the State of Florida was the ultimate payor of benefits, Unisys acted as administrative payor on behalf of the State.

[4]Shands' claim against Beech Street is based upon a contractual provision in the Hospital Provider Agreement that "Beech Street will use its best efforts to ensure that its Payors make payment to [Shands] on all approved claims within thirty (30) days of receipt of claim by Beech Street. If payment is not received within thirty (30) days of receipt of approved claim by Beech Street, then Payor will pay [Shands] the amount of the approved claims." Shands' complaint does not allege that Beech Street failed to perform any specific duties required under the "best efforts" clause. The mere fact that payment was not made by Unisys within thirty days is not sufficient to sustain a claim that Beech Street failed to use best efforts.

Here again, we find that a judgment on this claim would implicate state funds. The Hospital Provider Agreement expressly provides that the penalty for the failure to reimburse claims within thirty days is payment of the full amount of the claims. Such payment for medical services rendered is an obligation of the State. We reject Shands' contention that because Unisys may be contractually obligated to indemnify the State for the additional expense,[5] Unisys is also directly liable to Shands in the first instance. In the event that the State is obliged to make full payment to Shands due to negligence on the part of Unisys or Beech Street, the State may seek its remedy from the party at fault. However, the availability of this avenue to the State does not invest Shands with a cause of action against Unisys. Nor does the fact that the State may ultimately seek indemnification from a third party bear on the State's liability in the first instance. As the district court found such indemnification provisions are immaterial for purposes of Eleventh Amendment. "The Eleventh Amendment protects ... [a] State from the risk of adverse judgments even though the State may be indemnified by a third party ... it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

For the foregoing reasons the judgment of the district court is

AFFIRMED.

---

[5]Under the contract with Unisys, the State may institute proceedings to seek liquidated damages as the remedy for errors and delays in claims processing. The contract also obligates Unisys to post a performance bond with the DMS as beneficiary to protect the DMS against loss if Unisys fails to faithfully perform required services, and to indemnify the State for claims or losses resulting from its erroneous, negligent or willful acts.

7