In re Kenneth O. CHANDLER, Debtor.

Kenneth O. Chandler, Plaintiff–Appellee,

v.

State of Oklahoma ex rel. Oklahoma Tax Commission, Defendant–Appellant.

BAP No. NO–00–016.
Bankruptcy No. 99–01929.
Adversary No. 99–0173.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 24, 2000.

Kenneth O. Chandler, pro se.

Submitted on the briefs:* Thomas E. Kemp, Jr., General Counsel, Oklahoma

* After examining the briefs and appellate rec-

ord, the Court has determined unanimously to

Tax Commission; Joseph P. Gappa and Amber L. Willingham, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Defendant–Appellant.

Before CLARK, ROBINSON, and MATHESON, Bankruptcy Judges.

## OPINION

CLARK, Bankruptcy Judge.

The State of Oklahoma *ex rel.* Oklahoma State Tax Commission ("OTC") appeals a decision of the United States Bankruptcy Court for the Northern District of Oklahoma, holding that the OTC could be sued by the Chapter 7 debtor ("Debtor") in the bankruptcy court pursuant to 11 U.S.C. § 523(a).[1] In so holding, the bankruptcy court ruled that § 106(a) validly abrogates the OTC's sovereign immunity. For the reasons set forth below, we REVERSE and REMAND.

## I. *Background*

The OTC allegedly assessed the Debtor for certain taxes, and filed a tax warrant against the Debtor related to that tax debt. Several years later, the Debtor filed a petition seeking relief under Chapter 7 of the Bankruptcy Code. The OTC asserts that it has neither filed a proof of claim nor otherwise participated in the Debtor's Chapter 7 case, and these facts are not contested by the debtor.

The Debtor filed a complaint in the bankruptcy court, naming the OTC as a defendant, seeking a determination that his alleged tax debt to the OTC is dischargeable ("Dischargeability Action"). On the day that the Debtor filed his complaint, a summons was issued to the OTC. In response, the OTC made a special appearance in the Debtor's bankruptcy case, moving to dismiss the Dischargeability Action for lack of subject matter jurisdiction. The OTC argued that as a sovereign entity it was immune from suit under the Eleventh Amendment, and that § 106(a) was not a valid abrogation of its sovereign immunity. The OTC also maintained that it had not waived its immunity in the Debtor's case.

■ The bankruptcy court denied the OTC's motion to dismiss the Dischargeability Action. In so doing, the court issued a Memorandum Opinion and Order holding that § 106(a) validly abrogated the OTC's sovereign immunity. The OTC filed a timely appeal from the bankruptcy court's final Memorandum Opinion and Order, and no party has elected to have this appeal considered by the United States District Court for the Northern District of Oklahoma. *See* 28 U.S.C. § 158(a)(1) & (c)(1); Fed. R. Bankr.P. 8001(a) & 8002(a); 10th Cir. BAP L.R. 8001–1.[2]

## II. *Discussion*

■ In *Straight v. Wyoming Dep't of Transp. (In re Straight)*, 248 B.R. 403 (10th Cir. BAP 2000), this Court, in a split decision, ruled that § 106(a) is not a constitutional abrogation of a governmental unit's sovereign immunity. Given this binding decision, the bankruptcy court's order must be reversed, unless the Court

---

honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

1. Unless otherwise noted, all future statutory references herein are to title 11 of the United States Code.

2. It is well-established that an order denying a motion to dismiss on the grounds that a State is not entitled to its claim of sovereign immunity, such as the order appealed in this case, is "final" for purposes of 28 U.S.C. § 158(a)(1) under the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *accord Elephant Butte Irrig. Dist. v. Department of the Interior*, 160 F.3d 602, 607 (10th Cir. 1998), *cert. denied*, 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999); *Straight v. Wyoming Dep't of Transp. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000).

determines that the OTC is not entitled to claim sovereign immunity under the Eleventh Amendment, or that the OTC has waived its sovereign immunity. As discussed below, the proceeding involved herein is a "suit" to which the Eleventh Amendment applies and, based on the record before us, the OTC has not waived its sovereign immunity. Thus, the bankruptcy court's order must be reversed.

1. *The Dischargeability Action is a "Suit" to which the Eleventh Amendment Applies*

■ The States' sovereign immunity is derived from the Eleventh Amendment, which provides: "The Judicial power of the United States shall not be construed to extend to any *suit* in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI (emphasis added). This bar to federal jurisdiction extends to suits against States by its own citizens. *See, e.g., Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *accord Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Eleventh Amendment's express language makes clear that its limitations only apply to a "suit," and not all legal actions are suits for purposes of the immunity afforded to the States by the Eleventh Amendment. *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 407–12, 5 L.Ed. 257 (1821).

■ It is well-established that a suit for purposes of the Eleventh Amendment includes any action by a private party against a State that seeks to impose liability which must be paid from public funds of the State's treasury. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, monetary recovery against a State is not necessarily required for an action be deemed a suit. In *Seminole Tribe,* the Court stated:

[T]he type of relief sought is irrelevant to whether Congress has power to abro-

gate States' immunity. The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury," *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 48 [115 S.Ct. 394, 130 L.Ed.2d 245] (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S., at 146, [113 S.Ct. 684] (internal quotation marks omitted).

517 U.S. at 58, 116 S.Ct. 1114.

■ In bankruptcy, the overwhelming view is that an adversary proceeding that names a State as a defendant and summons it to appear in federal court is a suit for Eleventh Amendment purposes, regardless of whether the plaintiff is seeking monetary relief from the State. *See, e.g., Mitchell v. Franchise Tax Board, State of Calif. (In re Mitchell),* 209 F.3d 1111, 1116 (9th Cir.2000); *Virginia v. Collins (In re Collins),* 173 F.3d 924, 928–29 (4th Cir. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000); *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 786–87 (4th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington D.C., Inc.),* 119 F.3d 1140, 1148 (4th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998); *University of Virginia v. Robertson,* 243 B.R. 657, 662–65 (W.D.Va.2000); *Taylor v. Georgia Dep't of Revenue (In re Taylor),* 249 B.R. 571, 573–75 (Bankr.N.D.Ga.2000); *Pitts v. Ohio Dep't of Taxation (In re Pitts),* 241 B.R. 862, 868–70 (Bankr.N.D.Ohio 1999); *A.H. Robins Co. v. James Dieleuterio et al. (In re A.H. Robins Co.),* 235 B.R. 406 (Bankr. E.D.Va.1999); *see In re NVR, LP,* 189 F.3d 442, 452–53 (4th Cir.1999) (contested matter was a suit where, although not summoned to appear, the reorganized debtor sought monetary recovery from taxing authorities), *cert. denied,* —— U.S. ——, 120 S.Ct. 936, 145 L.Ed.2d 815

(2000); *Texas v. Walker*, 142 F.3d 813, 823 (5th Cir.1998), *cert. denied*, 525 U.S. 1102, 119 S.Ct. 865 (1999) (holding that bankruptcy case is not a suit as the State was not hauled into federal court against its will, but recognizing that the commencement of an adversary proceeding may be a suit); *In re Sun Healthcare Group, Inc.*, 245 B.R. 779, 785 (Bankr.D.Del.2000) (same); *In re Barrett Refining Corp.*, 221 B.R. 795, 801–08 (Bankr.W.D.Okla.1998) (same); *see also Missouri v. Fiske*, 290 U.S. 18, 28, 54 S.Ct. 18, 78 L.Ed. 145 (1933) (if a State does not come voluntarily to federal court, the federal court may not issue process compelling State to appear). In *Straight*, 248 B.R. at 409 n. 4, this Court agreed with this view, holding that the adversary proceeding in that case was a suit for purposes of the Eleventh Amendment.

The rationale behind the "adversary proceeding" rule is twofold. First, the commencement of an adversary proceeding naming a State as a defendant results in the issuance of a summons against the State thereby subjecting it to the "indignity" of a required appearance in a judicial tribunal. *Seminole*, 517 U.S. at 58, 116 S.Ct. 1114; *see* Fed. R. Bankr.P. 7001 & 7004 (making Fed.R.Civ.P. 4(a), (b), (c) and (j) applicable in adversary proceedings); *Antonelli*, 123 F.3d at 787 (commencement of an adversary proceeding would "amount to the exercise of federal judicial power to hale a state into federal court against its will and in violation of the Eleventh Amendment."), *quoted in NVR*, 189 F.3d at 453. Second, the commencement of an adversary proceeding against a State entails the bankruptcy court's exercise of *in personam* jurisdiction over the State, and the resolution of the proceeding results in a decision that is specifically binding on the State. *See Mitchell*, 209 F.3d at 1116 (relying on *Collins*, 173 F.3d at 930 (distin-

guishing "jurisdiction over the debtor and his estate" from "bankruptcy court jurisdiction over the state")); *Antonelli*, 123 F.3d at 787; *see also* Fed. R. Bankr.P. 7004(f) ("If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... in accordance with this rule or the subdivisions of Rule 4 F.R. Civ. P .... is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.").

■ In the Dischargeability Action, the Debtor has sought a determination of the dischargeability of his debt to the OTC in an adversary proceeding. The record shows that the Debtor named the OTC as a defendant in the Dischargeability Action, and the OTC was summoned to appear in the bankruptcy court. As such, the Dischargeability Action is a suit to which the Eleventh Amendment applies. *Accord Mitchell*, 209 F.3d at 1116; *Straight*, 248 B.R. at 409 n. 4; *Robertson*, 243 B.R. at 664–65; *Robins*, 235 B.R. at 411; *Pitts*, 241 B.R. at 868. Absent the OTC's waiver of its sovereign immunity, therefore, the bankruptcy court lacks jurisdiction to consider the Dischargeability Action.

In so holding, we note that had the relief sought in the Dischargeability Action been brought by motion, such as a motion to clarify or enforce a discharge order, as opposed to a § 523(a) adversary proceeding, the same result may not have ensued.[3] Although the issue is not squarely before us, existing law indicates that if a monetary recovery or dispossession of assets from a State are not sought in a contested matter, a suit does not exist and, therefore, the Eleventh Amendment does not apply. *See Walker*, 142 F.3d at 821–24;

---

**3.** The issue may never arise if the Debtor were to do nothing in the bankruptcy court and plead discharge as an affirmative defense in any later state court action by the OTC to enforce its alleged lien. *See* 12 Okla. Stat.

Ann. § 2008(C)(5) (2000) (discharge in bankruptcy must be plead as an affirmative defense); *Homeland Ins. Co. v. Rankin*, 848 P.2d 587, 591 (Okla.Ct.App.1993) (same).

*Collins,* 173 F.3d at 928–30; *Antonelli,* 123 F.3d at 787; *see also In re Crook,* 966 F.2d 539, 541–42 (10th Cir.), *cert. denied,* 506 U.S. 985, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992).[4] This limitation on the definition of a suit in bankruptcy is necessary to prevent the States from undermining the bankruptcy system, and is supported by longstanding law related to the bankruptcy courts' ability to enter orders fundamental to the bankruptcy process, such as discharge orders.[5] Yet, as desirable as this limitation on the definition of a suit may be, we recognize that the current state of the law is undesirable in that it puts form over substance: adversary proceedings against the State must be dismissed although, for all practical purposes, they result in the same relief as a non-monetary contested matter against the State. At this time, however, given the state of binding law, we see no other choice than to embrace this anomalous result.

2. *The Record in this Appeal Does Not Indicate that the OTC has Waived its Sovereign Immunity*

A State may waive its sovereign immunity in a bankruptcy case under § 106(b)[6] or under common law principles of sovereign immunity. *Straight,* 248 B.R. at 411–14. Based on our record, § 106(b) waiver is inapplicable because the OTC has

---

**4.** *Crook,* which was decided by the Tenth Circuit prior to *Seminole Tribe* and the amendments to § 106 in 1994, involved bankruptcy court orders confirming Chapter 12 plans which contained provisions writing down undersecured mortgages held by the State of Oklahoma. The State, which had not filed proofs of claim in the cases in question, entered special appearances in the cases to contest the plan provisions. In confirming the plans, the bankruptcy court rejected the State's sovereign immunity argument, holding that Congress' Article I bankruptcy power was superior to the State's Eleventh Amendment sovereign immunity. The district court affirmed, and the Tenth Circuit likewise affirmed, holding that sovereign immunity did not apply because the debtor was not seeking monetary relief from the State. Relying on *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Tenth Circuit held that declaratory and injunctive relief against a State was appropriate. 966 F.2d at 543. The court noted that the case at issue was not a "proceeding" against the State. *Id.* The Tenth Circuit's ruling in *Crook* has been superceded by *Seminole Tribe,* yet it is noteworthy that its rationale does not conflict with our decision today.

**5.** It has long been held that bankruptcy courts have the power to enter orders which affect the States as part of their *in rem* jurisdiction over bankruptcy estates and to effect the fundamental purposes of the Bankruptcy Code, such as discharge. *See, e.g., Gardner v. New Jersey,* 329 U.S. 565, 573–75, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *People of State of New York v. Irving Trust Co.,* 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933); *see also Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (discussing former § 106(c), the Court held that it was not offensive to the Eleventh Amendment that bankruptcy courts be allowed to make "determinations" affecting governmental units, provided no monetary recovery was sought, and stated: "a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, but would not be subjected to monetary recovery.") (citations omitted); *see generally United States v. Energy Res. Co.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) (recognizing that "bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."); *cf. California & State Lands Comm. v. Deep Sea Research, Inc.,* 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998) (recognizing an *in rem* exception to Eleventh Amendment immunity in the context of admiralty law; federal court could determine title to an abandoned shipwreck, even where a State was a potential title holder, where the State did not possess the vessel at issue). Furthermore, it is well-settled that bankruptcy courts have the power to interpret and enforce their orders. *See, e.g., In re Unioil,* 948 F.2d 678, 682 (10th Cir.1991) (citing cases).

**6.** Section 106(b) provides:

A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b).

not filed a proof of claim in the Debtor's Chapter 7 case. Furthermore, common law waiver does not appear to apply to the facts of this case. There is no Oklahoma statute or constitutional provision waiving the OTC's sovereign immunity, and this case does not involve the OTC's or the Debtor's participation in a federal program. *Straight,* 248 B.R. at 413.

### III. *Conclusion*

For the reasons set forth above, the bankruptcy court's order is REVERSED. The matter is REMANDED to the bankruptcy court to enter an order dismissing the Dischargeability Action.

MATHESON, Bankruptcy Judge, Concurring in Part.

I concur in the Court's disposition of the issue presented in this appeal. I decline to join in that portion of the opinion that purports to dispose of an issue involving a hypothetical scenario neither presented in this appeal nor argued nor briefed by the parties. The disposition of the question of what might occur if the Debtor elects to proceed by way of motion rather than an adversary proceeding should be reserved for another day.