In re Arthur GEESLIN, Jr., Debtor.

Arthur Geeslin, Jr., Movant,

v.

Peter Skandalakis, Respondent.

No. 02–42227.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

July 17, 2003.

Clark Adams, Jr., Columbus, GA, for Debtor.

Michael M. Custer, Albany, GA, Chapter 7 Trustee.

### MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On May 12, 2003, the Court held a hearing on a Motion for Contempt Against Peter Skandalakis ("Respondent"), a Georgia District Attorney, ("Contempt Motion") filed by Arthur Geeslin, Jr. ("Debtor"). During oral argument, the following issues were raised: Whether Respondent's actions to collect the forfeited bail bond be-cause the principal did not appear for trial are subject[1] to the automatic stay and the discharge injunction, when Debtor has received a discharge of debts under Chapter 7 of the United States Bankruptcy Code ("Code"). Further, if the automatic stay and discharge injunction apply, whether Respondent can claim 11th Amendment immunity. The Court took the matters under advisement and the parties were given an opportunity to submit briefs in support of their positions. The Court has considered the parties' briefs, oral arguments, and the applicable statutory and case law.

### BACKGROUND INFORMATION

The parties agree that the facts are not in dispute. Debtor was a commercial surety on a criminal bail bond in the amount of $125,000 and the principal was a criminal defendant as specified under O.C.G.A. § 17–6–1 et. seq. The criminal defendant failed to appear before the Superior Court of Meriwether County on the required date. Georgia law provides that "a bond forfeiture occurs at the end of the court day upon the failure of appearance of a principal of any bond or recognizance given for the appearance of that person." O.C.G.A. § 17–6–70(a) (1997 & Supp.2002). Debtor filed a Chapter 7 bankruptcy petition on September 10, 2002. Debtor received his discharge on December 30, 2002. Respondent, the District Attorney for the Coweta Judicial Circuit, has proceeded with an action to collect the criminal bail bond forfeiture from Debtor. Debtor brought this Contempt Motion against Respondent in an effort to prevent Respondent from obtaining a final judgment on the bond and from recovering the debt from Debtor.

Debtor contends that the bail bond forfeiture was a contractual obligation between himself and Respondent. Debtor

asserts that he is protected from collection of the debt by the automatic stay under 11 U.S.C. § 362(a). Further, Debtor asserts that the debt is dischargeable in bankruptcy and that it has been discharged. Therefore, Respondent is in violation of the automatic stay and the discharge injunction.

Respondent raised two policy issues in support of his position that actions to collect on bail bond forfeitures should be exempt from the automatic stay and the discharge injunction. First, Respondent argues that federal courts should not interfere with state government functions whenever possible. Moreover, bankruptcy laws do not provide exceptions to criminal proceedings. Respondent cited *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in which the Supreme Court acknowledged that, in matters of equitable relief, a state's administration of its own criminal justice system should be free from federal interference. *Younger*, 401 U.S. at 44–45, 91 S.Ct. 746. Respondent urges that the Code must be read and understood in light of this federalism.

The second policy reason advanced by Respondent is that the bail system would be undermined if bail bond forfeitures were not enforced by courts as an exception to the automatic stay and discharge injunction. Respondent contends that the effect could cause danger to the public. Respondent urges that a bail bond is a way to coerce the defendant's presence at trial by the threat of forfeiture. If bail forfeitures could be undermined, it might lead to increased evasion of states' bail bond statutes and third-party sureties could prevent the effects of paying the forfeiture by hiding behind the cloak of the Code.

In addition to the above policy arguments, Respondent contends that criminal bail bond forfeitures fall under 11 U.S.C. § 362(b)(4), an exception to the automatic stay, and are exempt from discharge under 11 U.S.C. § 523(a)(7). In the alternative, Respondent has asserted the State of Georgia's Eleventh Amendment sovereign immunity.

### CONCLUSIONS OF LAW

■ First, Debtor erred procedurally in his attempt to obtain an injunction. In pertinent part, Bankruptcy Rule 7001 provides that: "An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings . . . (7) a proceeding to obtain an injunction or other equitable relief. . . ." FED. R. BANKR. P. 7001. The injunctive relief sought by Debtor cannot be obtained under the clear language of Rule 7001(7). FED. R. BANKR. P. 7001(7).

■ While the Court cannot grant an injunction at this point, the Court may inquire whether there was a violation of the automatic stay under 11 U.S.C. § 362(a) and the discharge injunction under 11 U.S.C. § 524(a)(2). Respondent claims that the Eleventh Amendment prevents such an inquiry. This Court, like all other courts, must refrain from considering a constitutional question unless it is a required query. *See United States v. Clemons*, 843 F.2d 741, 750 (3d Cir.1988) *citing Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 341, 345, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *see also Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 50 (3d Cir. 1985); *Stoner v. Presbyterian Univ. Hosp.*, 609 F.2d 109, 111 (3d Cir.1979)(per curiam).

■ As stated by the court in *Commonwealth of Virginia v. Collins (In re Collins)*, 173 F.3d 924 (4th Cir.1999), "A federal court's jurisdiction over the dis-

chargeability of debt, just like its jurisdiction to confirm a plan of reorganization, 'derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over the debtors and their estates.'" *Collins,* 173 F.3d at 929, *quoting State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 787 (4th Cir.1997). By analogy, this Court has the fundamental power to determine whether Respondent's actions violate the automatic stay, as well as the discharge injunction. As stated in *Collins,* this power flows from this Court's jurisdiction over Debtor and his estate, not jurisdiction over Respondent. *Id.* The Eleventh Amendment is not implicated because the Court is not asserting *in personam* jurisdiction over Respondent. *See generally, Chandler v. State of Oklahoma (In re Chandler),* 251 B.R. 872, 876 (10th Cir. BAP 2000) (held that an adversary proceeding asserted *in personam* jurisdiction over state, thus Eleventh Amendment was implicated, but noted issues, such as discharge, fall under *in rem* jurisdiction, an exception to the Eleventh Amendment); *but see Mayes v. Cherokee Nation (In re Mayes),* 294 B.R. 145, 152–153 (10th Cir. BAP 2003)(held that a motion to avoid a judgment lien was a "suit" for sovereign immunity purposes despite the fact that an adversary proceeding had not been filed).

 As noted by the court in *Chandler,* the United States Supreme Court held years ago that bankruptcy courts have *in rem* jurisdiction over matters that may affect a state. *Chandler,* 251 B.R. at 877, *citing Gardner v. New Jersey,* 329 U.S. 565, 573–575, 67 S.Ct. 467, 91 L.Ed. 504 (1947). Bankruptcy courts do have the fundamental power to determine violations of the automatic stay and the discharge injunction. *See generally Collins,* 173 F.3d at 930. If courts were to recognize Eleventh Amendment sovereign immunity

in this context, "the bankruptcy system would be seriously undermined." *Id.* at 930.

 If this Court is to find civil contempt, then clear and convincing evidence must demonstrate that a willful disregard of the authority of the court took place. *See McGregor v. Chierico,* 206 F.3d 1378, 1383 (11th Cir.2000). According to the Eleventh Circuit, "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* Further, Debtor bears the burden of persuasion on each element that must be proven for an alleged violation of the automatic stay for damages to be recovered. *See Christakis v. McMahon (In re Christakis),* 291 B.R. 9, 18 (Bankr.D.Mass.2003). Debtor bears the same burden in order to receive damages when there is an alleged violation of the discharge injunction. *See In re Arnold,* 206 B.R. 560, 568 (Bankr. N.D.Ala.1997).

*11 U.S.C. § 362(a)—The Automatic Stay*

 In relevant part, 11 U.S.C. § 362(a) states that "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title... operates as a stay." 11 U.S.C. § 362(a) (1993 & Supp.2002). According to the court in *United Sav. Assoc. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), "When a bankruptcy petition is filed, § 362(a) of the Bankruptcy Code provides an automatic stay of, among other things, actions taken to realize the value of collateral given by the debtor." *United Sav. Assoc.,* 484 U.S. at 369, 108 S.Ct. 626. Moreover, 11 U.S.C. § 362(a) has a twofold purpose. First, it gives the debtor a "breathing spell" from creditors. *Chester*

*v. Parker (In re Parker)*, 289 B.R. 779, 781–782 (Bankr.M.D.Ga.2002) (Walker, J.). The stay stops all actions directed at the debtor including efforts to collect debts. *See Independent Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 966 F.2d 457, 459 (9th Cir.1992); *see also Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); H.R.Rep. No. 595, 95th Cong., 1st Sess., at 340 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6296–6297. Second, 11 U.S.C. § 362(a) prevents the "race to the courthouse," so that creditors will be treated equally. *In re Printup*, 264 B.R. 169, 173 (Bankr.E.D.Tenn.2001), *citing In re Southwest Equip. Rental, Inc.*, No. 1–88–00033, 1990 WL 129972, at *3 (Bankr. E.D.Tenn. Feb.8, 1990).

■■■■ The automatic stay provided for in 11 U.S.C. § 362(a) takes effect immediately upon the filing of a petition by the party seeking bankruptcy protection. *See generally* ALAN N. RESNICK ET AL., COLLIER ON BANKRUPTCY § 362.11 (15th ed.2003). Section 362(h) of the Code states that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h)(1993 & Supp.2002). Damages for a willful violation of the automatic stay must establish that "the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *Printup*, 264 B.R. at 173, *citing Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr. E.D.Tenn.1996).

■■■■ The Court must address Respondent's argument that 11 U.S.C. § 362(b)(4) creates an exception under which Respondent's actions do not violate the stay. Section 362(b)(4) creates an exception to the stay for actions taken by a governmental unit to enforce its police or regulatory power. 11 U.S.C. § 362(b)(4)(1993 & Supp.2002). If Respondent's actions fall under this exception, there is no need to address whether the debt was discharged.

■■■■ Courts have developed two tests to decide whether governmental actions fall under this exception: 1) public policy test; 2) pecuniary interest test. *See Chao v. Hospital Staffing Serv., Inc.*, 270 F.3d 374, 385–386 (6th Cir.2001); *U.S. v. Commonwealth Cos., Inc. (In re Commonwealth Cos., Inc.)*, 913 F.2d 518, 523–524 (8th Cir.1990); *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir.1988); *McAtee v. The Fla. Bar (In re McAtee)*, 162 B.R. 574, 577–578 (Bankr.N.D.Fla.1993). Under the public policy test, a proceeding is reviewed to determine whether it "adjudicates private rights" or "effectuates public policy considerations." *Chao*, 270 F.3d at 385–386. Only those proceedings that effectuate public policy considerations are exempt from the stay. *See id.* at 386. Under the pecuniary interest test, a proceeding is reviewed to determine whether it furthers the governmental unit's pecuniary interest or matters of public safety. *See id.* at 385. Only those proceedings that further matters of public safety are exempt from the stay. *See id.*

■■■■ Many courts look to the legislative history when considering the issue of whether the stay applies to actions by governmental units. *See McAtee*, 162 B.R. at 577. According to legislative history, 11 U.S.C. § 362(b)(4) should be construed narrowly allowing only actions by governmental units "to protect public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong. Rec. S17406

(daily ed. Oct. 6, 1976) (statement of Sen. DeConcini), reprinted in 1978 U.S.C.C.A.N. 6505, 6513; *see also McAtee,* 162 B.R. at 577.

▮ Here, applying both tests, the Court finds that Respondent's actions are pecuniary in nature and that those actions would not further any public health or safety considerations. Respondent attempted to collect a bail bond forfeiture from a professional bail bondsman who declared bankruptcy. The Court has been given no indication that Debtor is the criminal defendant or a family member or friend of the criminal defendant for whom the bail bond was issued. The Court finds that this matter is civil in nature and that Congress' intent was for 11 U.S.C. § 362(b)(4) to apply to criminal matters. Therefore, the exception under 11 U.S.C. § 362(b)(4) does not apply to Respondent's actions. The Court is not persuaded by Respondent's policy arguments that such a determination will undermine the underlying purposes of the bail system. The Court finds that a willful violation of the automatic stay occurred when Respondent attempted to recover the forfeited bail bond from Debtor.

### 11 U.S.C. § 524(a)(2)—The Discharge Injunction

▮ The Court will now address Debtor's claim that Respondent's actions are also in violation of the discharge injunction under 11 U.S.C. § 524(a)(2). Debtor's request for a determination that the bail bond forfeiture owed to Meriwether County was discharged may be obtained without an adversary proceeding despite Rule 7001(6). FED. R. BANKR. P. 7001(6). The Fourth Circuit, in *Collins,* held that an adversary proceeding was not required to determine whether a debt had been discharged. *See Collins,* 173 F.3d at 929. However, as Respondent argued, *Collins*

was criticized by one court because it disregarded the Federal Rules of Bankruptcy Procedure. *See Janc v. Coordinating Bd. for Higher Educ. (In re Janc),* 251 B.R. 525, 541 (Bankr.W.D.Mo.2000). This Court agrees with the reasoning of the *Collins* court. *Collins,* 173 F.3d at 929–931. To determine whether Respondent violated the discharge injunction, a necessary query is whether the debt was discharged in the first place.

▮ This query begins with 11 U.S.C. § 727, which provides exceptions to the discharge order if a debtor is not an individual or if a debtor has committed certain acts. 11 U.S.C. § 727(a) (1993 & Supp. 2002). It is not alleged that Debtor or his actions fall under the provisions of § 727(a), therefore the query moves to § 727(b). 11 U.S.C. § 727(b) (1993 & Supp.2002). Under 11 U.S.C. § 727(b) all pre-petition debts are discharged, except those debts set forth in 11 U.S.C. § 523(a). 11 U.S.C. §§ 523(a), 727(b)(1993 & Supp. 2002); *see also In re Crull,* 101 B.R. 60, 61 (Bankr.W.D.Ark.1989). Briefs submitted on behalf of Debtor and Respondent directed the Court's attention to 11 U.S.C. § 523(a)(7) because the debt was incurred when the criminal defendant absconded and was a type of forfeiture. In pertinent part, 11 U.S.C. § 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7)(1993 & Supp.2002).

Professional bail bondsmen incur debt when criminal defendants, for which the bondsmen are sureties, abscond prior to trial. When dealing with the dischargeability of bail bond forfeitures where the debtor is the owner of a bail bond company, courts have ruled that professional bail bondsmen's obligations are contractual in

nature and do not arise out of the underlying criminal activity. *See Hickman v. Texas (In re Hickman)*, 260 F.3d 400, 406 (5th Cir.2001); *Collins*, 173 F.3d at 931; *County of Berks v. Damore (In re Damore)*, 195 B.R. 40, 42 (Bankr.E.D.Pa. 1996); *Pioneer Gen'l Ins. Co. v. Midkiff (In re Midkiff)*, 86 B.R. 239, 240 (Bankr. D.Colo.1988); *Pioneer Gen'l Ins. Co. v. Paige (In re Paige)*, No. 86 B 8072, 87 E 194, 1988 WL 62500, *4 (Bankr.D.Colo. April 15, 1988). Moreover, the monetary obligation does not arise from the commission of any criminal or penal act. *See Collins*, 173 F.3d at 932. These same courts have interpreted the leading United States Supreme Court case dealing with 11 U.S.C. § 523(a)(7), *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), to allow discharge for debt created by bail bond forfeitures that are not penal in nature. *Kelly*, 479 U.S. at 50, 107 S.Ct. 353; *see Hickman*, 260 F.3d at 406; *Collins*, 173 F.3d at 931–932; *Damore*, 195 B.R. at 42; *Midkiff*, 86 B.R. at 240 (adopted reasoning in *Paige* ); *Paige*, 1988 WL 62500, at *4. The courts in *Collins* and *Hickman* held that Congress did not intend 11 U.S.C. § 523(a)(7) to make criminal bail bond forfeitures non-dischargeable, when the debtor is the surety, not the criminal out of jail on bond. *Hickman*, 260 F.3d at 407; *Collins*, 173 F.3d at 932. The facts in *Hickman* and *Collins* are similar to those before this Court because the cases involved people who ran bail bond companies, then petitioned for bankruptcy. *Hickman*, 260 F.3d at 401; *Collins*, 173 F.3d at 926.

While numerous cases dealing with professional bail bondsmen allow for a discharge under 11 U.S.C. § 523(a)(7), courts often rule the opposite, as pointed out by Respondent, when the bail bond surety is a friend or family member or if the fees are penal in nature. *See City of Philadelphia v. Nam (In re Nam)*, 273 F.3d 281, 294 (3d Cir.2001); *United States v. Cox, (In re Cox)*, 33 B.R. 657, 662 (Bankr.M.D.Ga.1983)(Hershner, J.). The court in *Nam* held that, if 11 U.S.C. § 523(a)(7) allowed a criminal bail bond forfeiture to be dischargeable, such action would disregard the plain meaning of the statute and could disable the bail system. *Nam*, 273 F.3d at 283. The facts in *Nam* differ from the facts here. *Id.* at 283–284. In *Nam*, the son was charged with murder, robbery, and burglary. *Id.* at 283. The father, who was the debtor, bailed his son out of jail and arranged for him to return to South Korea. *See id.* at 284. The father subsequently filed for bankruptcy and the bail bond forfeiture was held to be non-dischargeable. *See id.*

Respondent also cites to *Cox* as support for his position. In that case, a criminal was convicted and ordered by the court to pay the attorneys' fees for the government's prosecution of him. *See Cox*, 33 B.R. at 658. The convicted criminal petitioned for bankruptcy and the bankruptcy court held that the debt was non-dischargeable because his debt to the government under 11 U.S.C. § 523(a)(7) was penal in nature. *See id.* at 662. Once again the facts in *Cox* are distinguishable from the facts here. *Id.* at 658.

Further, there are policy arguments that support the dischargeability of debt under 11 U.S.C. § 523(a)(7) for professional bail bondsmen that out weigh Respondent's policy arguments. First, "the most important consideration limiting the breadth of the definition of [forfeiture] lies in the basic purpose of the Bankruptcy Act to give the debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Hickman*, 260 F.3d at 404, *citing Local Loan Co. v. Hunt*, 292 U.S. 234, 244–245, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Allowing dischargeability of

bail bond forfeitures should not be taken to the extreme where bankruptcy courts become "a haven for wrongdoers." *Hickman*, 260 F.3d at 404, *citing Fezler v. Davis (In re Davis)*, 194 F.3d 570, 573 (5th Cir.1999). However, this concern must be balanced with the potential harm to the bail system if professional bail bondsmen are not allowed to discharge their business debt. Such an outcome could lead to the collapse of the bail system because bondsmen could perceive the risk of doing business as too high. Accordingly, a policy of not allowing the discharge of bail bond forfeitures, when the debtor is a professional bail bondsman, could be detrimental to the bail system, rather than in furtherance of the policies behind the bail system.

Here, as stated above, Debtor's position is analogous to the *Hickman* and *Collins* cases. *Hickman*, 260 F.3d at 401; *Collins*, 173 F.3d at 926. The contractual nature of the bond forfeiture and significant policy factors weigh in Debtor's favor. Therefore, the Court finds that debts incurred by Debtor through his professional bail bonding company were discharged. Thus, Respondent's continued actions, to collect on the bail bond forfeiture after Debtor received a discharge, violate the discharge injunction.

### Remedies

■ Unlike the inquiry whether Respondent's actions violated the automatic stay and the discharge injunction, the recovery of damages would require the Court to address the Eleventh Amendment sovereign immunity argument asserted by Respondent. *See Chandler*, 251 B.R. at 875. However, in accordance with *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), federal courts are not precluded from granting injunctive relief to prevent a continuing violation of federal law. *Young*, 209 U.S. at 155–156, 159, 28 S.Ct. 441; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

Notwithstanding Respondent's violation of the automatic stay and the discharge injunction, Debtor has failed to meet his burden to provide the Court with evidence of actual or punitive damages. Since damages will not be awarded to Debtor, again the Eleventh Amendment sovereign immunity issue will not be reached. Further, the Court cannot make the necessary inquiry to rule on an injunction because an adversary proceeding has not been filed. While the Court has full authority to find Respondent in violation of the automatic stay and the discharge injunction, enforcement of that contempt order, as a result of these legal conclusions, is another question. Whether Debtor will be able to persuade the Court to award injunctive relief is an issue for another day.

■ To the extent that there is any existing collateral given by the criminal defendant to Debtor to hold as surety, Respondent may collect that collateral in one of three ways: 1) by obtaining relief from the automatic stay under 11 U.S.C. § 362(d); 2) collection after abandonment of the property by the Chapter 7 Trustee; or 3) by waiting until after the final closing order is issued in Debtor's case.

Finally, the Court recognizes that there is an adversary proceeding in the this case that was filed by another party regarding this same bail bond forfeiture under different sections of 11 U.S.C. § 523 than addressed by the Court in this Memorandum Opinion. The finding in this Contempt Motion that the bail bond forfeiture was discharged is not binding on the Court in the adversary proceeding dealing with alle-

gations of fraud. No evidence or argument has been made by Respondent that the bail bond forfeiture involved fraudulent actions by Debtor. Therefore, the Court has not ruled on such matters. An order in accordance with this Memorandum Opinion will be entered.